# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS

**LEON AARON MORRIS,**

        **Plaintiff,**

v.                                                                               **Civil Action No. 2:14cv18**
                                                                                            **(Judge Bailey)**

**CHARLES E. SAMUELS, Director of the Bureau of Prisons,**
**C. EICHENLAUB, Regional Director for the Mid-Atlantic Regional Office,**
**R.A. PURDUE, Warden of F.C.I. Gilmer,**
**JEREMIAH JOHNSTON, F.C.I. Gilmer Facility Manager,**
**WALLY CUTRIGHT, F.C.I. Gilmer Plumbing II Supervisor for Facilities,**
**RODGER GREENE, F.C.I. Gilmer Plumbing I Supervisor for Facilities,**
**BRUCE McCLUNG, Tool Room Officer of Facilities,**

        **Defendants**

## REPORT AND RECOMMENDATION

### *I. INTRODUCTION*

On March 5, 2014, Leon Morris (hereinafter "Plaintiff"), a federal inmate, initiated this case by filing a *pro se* civil rights complaint. (ECF No. 1). On March 7, 2014, Plaintiff was sent a Notice of Deficient Pleading. (ECF No. 6). On March 17, 2014, Plaintiff filed his Complaint on the court-approved form as well as his Motion/Application to proceed without prepayment of fees. (ECF Nos. 8, 9). On March 18, 2014, Plaintiff was granted leave to proceed *in forma pauperis* (ECF No. 10), and on April 7, 2014, he paid his required initial partial filing fee (ECF No. 14).

In his Complaint, Plaintiff alleges that he and three other inmates were falsely accused of losing a water hose at Federal Correctional Institution ("FCI") Gilmer in September of 2011.

1

Plaintiff complains that as a result, he was removed from his prison job as a plumber and removed from the plumbing apprenticeship program. For relief, Plaintiff seeks "$600,000 for compensatory wage loss until [his] retirement age of 70...and to be awarded $100,000 for punitive fines against Defendants, so that they will be deterred from committing these types of criminal acts against other similarly situated inmates under their custodial care." (ECF No. 8 at 10).

On October 22, 2014, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. (ECF No. 36). Accordingly, an Order was entered directing the Clerk to issue sixty-day summonses for the named Defendants and providing for service through the United States Marshal.

On December 22, 2014, Defendants filed a Motion to Dismiss or for Summary Judgment in lieu of an Answer. (ECF No. 60). In support of their Motion, Defendants contend that Plaintiff has failed to allege constitutional violations with respect to any of his claims. In addition, Defendants maintain that they are entitled to qualified immunity. Finally, Defendants assert that this Court lacks personal jurisdiction over Samuels and Eichenlaub.

On December 23, 2014, a <u>Roseboro</u> Notice was issued. On January 13, 2014, Plaintiff filed a Response in Opposition to the Motion to Dismiss. In his Response, Plaintiff sets forth in more detail the events surrounding the "lost" water hose. He also sets forth allegations that Defendants violated his First Amendment rights to freedom of speech by their retaliatory actions of punishing him with adverse conditions after he exercised his right to redress staff misconduct through the inmate grievance system. Specifically, Plaintiff maintains that his pay was decreased, he was not permitted to go out on any work passes to perform institutional jobs, and he was forced to just sit inside the prison plumbing shop, on a bench, hour upon hours each day. Plaintiff also contends that

2

when he filed grievances regarding this initial retaliation, he was suffered further retaliation when he was fired or otherwise terminated or removed from his institutional job as a plumber without justification. Plaintiff also indicates that "[f]or the record, it should be noted that [he] and his 3 co-workers were/are ALL African American." (ECF. No. 71 at 3). Finally, he raises a claim that Defendants violated his Eighth Amendment rights to remain free from cruel and unusual punishment when they placed him on the "hitching post" for three hours while staff searched for the "missing" hose. Plaintiff maintains that during those three hours, he was over exposed to extremely hot weather and was without shelter, drinking water or the ability to use any toilet facility.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Federal Rules of Civil Procedure Rule 12(b)(6) allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

3

When reviewing a Rule 12(b)(6) motion, courts assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of the plaintiff and view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## B. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material

4

fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also Anderson, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

*III. Analysis*

Plaintiff is a BOP inmate, who is serving a 108 month sentence imposed by the United States District Court for the Southern District of Ohio. Plaintiff has been incarcerated at FCI Gilmer since August 10, 2010 except for the period from August 31, 2010 through October 6, 2010, when Plaintiff was incarcerated elsewhere. Other than during the brief period, Plaintiff worked at FCI Gilmer as a plumber until November 9, 2012.

On September 21, 2011, a water hose was reported missing from the plumbing department. Plaintiff and three other inmate plumbers were questioned about the hose. The water hose was subsequently located in another area of the prison. Staff determined that Plaintiff was not responsible for the missing hose, and neither Plaintiff nor the other inmate plumbers were charged with a disciplinary infraction. Following the September 21, 2011 incident, Plaintiff continued to work as a plumber for more than one year. As previously noted, Plaintiff alleges that he was fired from his position as plumber because of the false accusation and/or as retaliation for his filing

5

grievances regarding the false accusation. He also complains that the loss of his work assignment as a plumber resulted in a reduction in his pay grade and removal from the plumber apprentice program. For the reasons discussed more fully below, neither claim establishes a violation of his constitutional rights, and therefore, he fails to state a viable Bivens[1] action.

## A. *Supervisory Liability*

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Supreme Court abolished supervisory liability under Bivens. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. "Because *vicarious liability* is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. The Court held that "[i]n a § 1983 suit or a Bivens action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 697. Moreover, the Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," and found that "purpose rather than knowledge" was required to impose liability. Id.

In this case, Plaintiff does not allege any personal involvement on the part of Defendants, Charles E. Samuels, Jr., C. Eichenlaub, and R.A. Perdue. Instead, it appears that Plaintiff has

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. A Bivens action "must be founded upon a violation of constitutional rights." See Anderson v. Peters, 829 F.2d 671, 676 (8th Cir. 1987).

6

named them merely in their supervisory capacity as the Director of the BOP, Mid-Atlantic Regional Director and Warden of FCI Gilmer.[2] Accordingly, these three Defendants should be dismissed.

*B. False Accusations*

Plaintiff alleges that he and three other inmates were falsely accused of losing a water hose. Defendants do not dispute that Plaintiff was questioned regarding the "missing" hose, nor do they dispute that Plaintiff was not responsible for the hose being missing. The matter appears to have been resolved that same day and no disciplinary charges were filed. While Plaintiff may be offended that he was falsely "accused" of losing or taking the hose, such false accusation does not rise to a constitutional violation. In fact, even if disciplinary charges had been filed and ultimately dismissed, no constitutional violation would have occurred. "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." Lewis v. Viton, 07-3663, 2007 WL 2362587 *9 (D.N.J. Aug. 14, 2007) (citing Freeman v. Rideout) 808 F.2d 949, 962-53 (2d Cir. 1986). There simply is no constitutional right to be free from being falsely accused. See McClay v. Fowlkes, 2008 WL 399263w7 *4 n.6 (E.D. Va. Aug. 27, 2008) ("To the extent the plaintiff claims that he was falsely accused, he fails to state a § 1983 claim because '[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.") (internal citations omitted); Anderson v. Green, 2009 W.L. 2711885 *4 (D. Md. Aug. 24, 2009) (same); Riggerman v. Ziegler, 2012 WL 4119674 *5 (S.D.W. Va. Aug. 22, 2012) (inmates have no constitutional right prohibiting false charges against them).

---

[2] To the extent Plaintiff may be asserting that Defendants have violated his constitutional rights by denying his administrative grievances, that claim is without merit. This is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D. Md. March 31, 2003).

7

*C. Prison Job*

Plaintiff alleges that he was fired from his job as a plumber, which resulted in a change in his paygrade and removal from the plumber apprenticeship program. However, as this Court has recognized, the law is well established that a prisoner does not have a constitutionally protected right to work while incarcerated – or to remain in a particular job once assigned. Boyles v. West Virginia Department of Corrections, 2013 WL 5728143 at *2 (N.D.W. Va. Oct. 22, 2013). "Prisoner work assignments are matters within the discretion of prison officials, and denial of employment does not, in an of itself, abridge any constitutional right of the inmate. Id. (citing Johnson v. Krable, 862 F.2d 314, 1988 WL 119136 at *1 (4th Cir. 1988) (table)).

The same is true about a prisoner's pay grade or any benefit that stems from the prison job, such as an apprenticeship program. See Goodman v. McBride, 2007 WL 1821090 *2 (S.D. W. Va. June 22, 2007) ("If an inmate has no constitutionally protected interest in maintaining a particular job assignment, then, *a fortiori*, he has no constitutionally protected interest in any benefit that may stem from maintaining a particular job assignment." Accordingly, because Plaintiff has no constitutional right to any particular job or its benefits, this claim must be dismissed.

The undersigned recognizes that if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." Brown v. Summer, 701 F. Supp. 762, 764 (D. Nev. 1988). In his response to Defendant's Motion to Dismiss or for Summary Judgment, Plaintiff commented that he and his co-workers, who were falsely accused, are all African Americans. However, to the extent that Plaintiff is attempting to raise a claim of racial discrimination, the same

8

should be denied.

Plaintiff may not use his memorandum in opposition to Defendants' motion for summary judgment to amend his complaint. See Swann v. Source One Staffing Solutions, 778 F. Supp.2d 611, 622 (E.D.N.C. 2011) (citing Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 Fed.Appx. 556, 563 (4th Cir. 2008) (unpublished); Car Carriers, Inc. V. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Bratcher v. Pharm.Prod.Dev., Inc., 545 F.Supp2d 533, 542-43 (E.D.N.C. 2008). [A]t the summary judgment stage, 'the proper procedure for plaintiff is to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." Artis v. U.S. Foodservice, Inc., No. CIV. A. ELH-11-3406, 2014 WL 640848, at *19 (D. Md. Feb. 18, 2014) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

Furthermore, under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Id. Exhaustion is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal

court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."

Here, it not clear that Plaintiff exhausted his administrative remedies. However, it is clear that to the extent Plaintiff did file grievances with respect to being false accused of losing a tool and eventually being terminated from his job as a plumber, he never once raised the issue of racial discrimination as a factor. (See ECF. Nos. 1-2 & 1-3). Therefore, Plaintiff has not given the BOP the opportunity to investigate any such charge of racial motivation, and accordingly, this Court lacks jurisdiction to consider the same.[3]

## C. *Administrative Remedy/Grievance Process*

Plaintiff appears to allege that various Defendants violated his constitutional rights by interfering with or ignoring his administrative remedy process at the BP-11, or General Counsel level. However, to the extent that Plaintiff is alleging that he has a constitutional right to file an inmate grievance, he is mistaken. See Conrad v. Perdue, No. 3:12cv133, 2014 WL 36646 * 12 (N.D W. Va. Jan. 6, 2014) (no constitutionally protected right to the grievance procedures); Adams v.

---

[3]Likewise, to the extent that Plaintiff asserts that he was subjected to cruel and unusual punishment by being subjected to the lieutenant's bench ("hitching post") while the plumbing shop prison authorities spent three hours searching for the "missing" water hose, Plaintiff again failed to raise this claim in his complaint or address this issue in his administrative grievances. Moreover, to succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious," and (2) that subjectively the prison official acted with a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). It must be remembered that "the Constitution does not mandate comfortable prisons" and prisons "cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, a deprivation of a basic human need is "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). In the instant matter, Plaintiff's allegation that he spent three to four hours without drinking water or a toilet facility does not rise to the level of an Eighth Amendment violation.

Rice, 40 F.3d 72, 75 (4th Cir. 1984) (no constitutional right to grievance procedures); Brown v. G.P. Dodson, 94–0426-R, 863 F.Supp. 284 (W.D. Va. June 2, 1994) (inmates do not have constitutional rights to the prison grievance procedures): Jackson v. Dillman, No. 7:11-cv-00140, 2011 WL 1883400 *3 (W.D. Va. May 17, 2011) (same). Therefore, any claim by Plaintiff that Defendants interfered or denied him his constitutional rights with respect to the administrative remedy/grievance process is without merit and must be dismissed.

## D. *Retaliation Claims*

Plaintiff alleges that he was fired from his job in the plumbing department at FCI Gilmer in retaliation for his pursuing grievances with respect to the "missing" tool. He also alleges that prior to being fired, his pay was decreased, he was not called out on jobs, and was forced to just sit in the plumbing department. However, to prevail on a claim of retaliation, Plaintiff must show that the retaliatory act was taken in response to the excise of a constitutionally protected right. See Ogunvale v. Esparza, No. 2:07cv52, 2008 WL 2902161 (N.D.W. Va. July 25, 2008) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995) ("In establishing a retaliation claim, a plaintiff must allege that the retaliatory action was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."). As previously noted, there is no constitutional right to file an inmate grievance, nor is there a constitutional right to a prison job, or pay attendant to a particular job. Therefore, Plaintiff cannot prevail on his alleged retaliation claim because neither the alleged retaliatory act nor the exercise of an alleged right implicate constitutional safeguards.

Moreover, Plaintiff must allege specific facts supporting his claim of retaliation; bare assertions are insufficient to establish a constitutional claim. Adams, 40 F.3d at 74-75. "[I]n forma

11

pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B)]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Here, Plaintiff alleges that he was fired from his job in retaliation for filing grievances about the improper actions of staff regarding the missing tool. However, beyond this bald assertion, Plaintiff provides no facts to support his claim. For purposes of evaluating his claim, it is critical to note that Plaintiff began the administrative grievance process on September 26, 2011, and remained in his plumbing position through approximately November of 2012, more than one year after he began complaining about staff conduct. (ECF No. 61-2 at 2). Furthermore, it should be noted, that Defendants have provided uncontroverted evidence that by May 2012, Plaintiff's work performance had declined to the point that he was only receiving fair performance ratings in the categories of quality of work, quantity of work, initiative and interest. In addition, other inmates were complaining about Plaintiff's work during the period of May 2012 through September 2012. Accordingly, Plaintiff's direct supervisor agreed with the plumbing foreman and the facilities manager that Plaintiff should be assigned to a different department. (ECF No. 61-5 at 3). All three have declared that this decision had nothing to do with Plaintiff's use of the administrative grievance process. Therefore, the weight of the evidence establishes that Plaintiff's decrease in pay and ultimate termination from his plumbing position resulted from his poor work performance and not from "retaliation" for filing grievances.

**E. Miscellaneous Motions**

*1. Motions to Amend (ECF Nos. 64, 72, 74, 84)*

On December 31, 2014, Plaintiff filed a Motion to Amend his court-approved Complaint to add another claim of retaliation. (ECF. No. 64). Specifically, Plaintiff alleges that Defendants violated the Privacy Act by including in their response to his Complaint personal and confidential information which has nothing to do with this case. On January 14, 2015, Plaintiff filed a second Motion to Amend his Court-Approved Complaint to add Sharon Wahl as a Defendant. (ECF. No. 72). Plaintiff alleges that Ms. Wahl violated his First Amendment rights by disclosing confidential information concerning his criminal case.[4] On January 22, 2015, Plaintiff filed a third Motion to Amend his Complaint and add a claim under the Sarbanes-Oxley Act of 2010. (ECF. No. 74). On April 22, 2015, Plaintiff filed a fourth Motion to Amend his Court-approved Complaint to add Helen Altmeyer as a Defendant. (ECF No. 84). Plaintiff alleges that Ms. Altmeyer, counsel for Defendants, stated that the information concerning his criminal case is public. However, Plaintiff maintains that his "Judge" made it clear that the information is not for public disclosure.

Federal Rule of Civil Procedure 15(a) provides that " a party may amend the party's pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading.... In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Here, Plaintiff's first Motion to Amend , filed on December 31, 2014, and second Motion to Amend, filed January 22, 2015,[5] were filed within twenty-one days of the Defendants' Motion for Summary

---

[4]Sharon Wahl is a paralegal with the Beckley Consolidate Legal Center , located at the Federal Correctional Institution ("FCI") Beckley, West Virginia. In her Declaration, Ms. Wahl noted that Plaintiff is serving a 108 month sentence imposed by the United States District Court for the Southern District of Ohio as well as a one day sentence for a separate offense. She also noted the crimes for which he was sentenced.

[5]Although not received until January 22, 2015, the motion is postmarked January 20, 2015.

Judgment. Accordingly, said Motions (ECF Nos. 64 & 72) should be granted. In addition, although filed beyond the time period established by Rule 15(a), Plaintiff's third Motion to Amend (ECF No. 74) and fourth Motion to Amend (ECF No. 84) should be granted. However, for the reasons stated below, each of the amendments should be dismissed for failure to state a claim upon which relief can be granted.

By enacting 5 U.S.C. § 552 a(g) of the Privacy Act, the United States consented to be sued in situations where that provision applies. However, the Privacy Act does not afford an individual a right to sue any defendant with respect to information contained in the BOP's Inmate Central Record System because a federal regulation, which has the force of law, expressly exempts the BOP's Inmate Central Record System from suit under 552 a(g). See 28 C.F.R. § 16.97 (a)(4) (exempting the Inmate Central Record System from the provisions of 5 U.S.C. § 552 a(g) among other provisions of the Privacy Act). Accordingly, the Privacy Act does not afford the plaintiff a right of action either against the BOP, as a federal agency, or against any individuals with respect to these records. See Ramirez v. Dep't of Justice, 594 F. Supp.2d 58 (D.D.C. 2009) (explaining that the Privacy Act authorizes suits against agencies of the federal government only, and not against any officers or employees of the agency).

Furthermore, Plaintiff's criminal docket from the United States District Court for the Southern District of Ohio, which is available on PACER,[6] clearly establishes the crimes for which he was convicted and the sentences that he received. Therefore, the information noted by Defendants in their Memorandum in Support of their Motion to Dismiss or for Summary Judgment is available to the

---

[6]PACER stands for Public Access to Court Electronic Records, and is available at www.pacer.gov.

public and is neither private nor sealed. Accordingly, Plaintiff's Amendments (ECF Nos. 64, 72 and 84) fail to state a claim for relief.

As for Plaintiff's Motion to Amend his Complaint (ECF No. 74), Section 806 of the Sarbanes-Oxley Act protects employees of publicly-traded companies and employees of contractors and subcontractors of publicly-traded companies. More specifically, under Section 806, whistleblowers are protected for providing information about securities fraud, shareholder fraud, bank fraud, a violation of any SEC rule or regulation, mail fraud or wire fraud. Accordingly, the Sarbanes Oxley Act does not cover federal inmates employed within BOP facilities, and its whistleblower protection has no application to Plaintiff. Therefore, Plaintiff's third Motion to Amend (ECF No. 74) fails to state a claim for relief.

*2. Motion to Appoint Counsel (ECF No. 65)*

On December 31, 2014, Plaintiff filed a Motion to appoint counsel "so that he will be given a fair chance of being able to 'prove' the merits of this instant civil filing that is now before the courts review." (ECF. No. 65 at 1).

In contrast to a criminal proceeding in which the Court has a duty to assign counsel to represent an indigent defendant in accordance with his constitutional rights, the Court in a civil case has the discretion to request an attorney to represent a person unable to employ counsel. See 28 U.S.C. §1915(e)(1). It is well settled that in a civil action, the Court should appoint counsel to represent an indigent only after a showing of a particular need or exceptional circumstances. Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984).

Upon review of the pending motion, the undersigned is of the opinion that Plaintiff has failed to show a particular need or exceptional circumstances that would require the assistance of a trained practitioner. Accordingly, Plaintiff's motion for appointment of counsel should be denied.

*3. Motion for Default Judgment (ECF No. 66)*

On December 31, 2014, Plaintiff filed a Motion for Default Judgment alleging that an Order was entered on October 22, 2014, which required Defendants to file their Answer by December 27, 2014. (ECF No. 66). Plaintiff alleges that Defendants have willfully and unlawfully violated the Court's Order and, therefore, seeks default and an award of $100,00 per violator.

A review of the record does establish than an Order to Answer was entered on October 22, 2014, affording Defendants sixty days in which to file their answer. (ECF No. 36). Accordingly, at the earliest, Defendants answer was due on Monday, December 22, 2014,[7] the precise date on which they filed their Motion to Dismiss or for Summary Judgment. Accordingly, Defendants are not in default, and Plaintiff's Motion should be denied.

*4. Motion Requesting Court to File a Complaint with the Bar against Helen Altmeyer (ECF No. 77).*

On February 2, 2015, Plaintiff filed a Motion requesting that this Court file a complaint with the West Virginia State Bar against Ms. Altmeyer for allegedly disclosing confidential information in the Defendants' Motion to Dismiss or for Summary Judgment. (ECF No. 77). As previously noted, nothing contained in the Defendants' Motion or Memorandum in support thereof contains any confidential information. Moreover, to the extent Plaintiff alleges that Ms. Altmeyer referenced his cooperation in a criminal matter, a thorough review of the Defendants' pleadings establish that no

---

[7]However, the triggering of the sixty days is the date the summonses were served. Here, the last Defendant was not served until October 29, 2014. (ECF. No. 45). Therefore, Defendants technically were not required to answer until Monday, December 29, 2014.

such reference was made. Accordingly, Plaintiff has failed to state a viable claim that Ms. Altmeyer breached any provision of the Code of Professional Conduct, and Plaintiff's Motion should be denied.

5. *Motion to Obtain Vital Information (ECF No. 80)*

On February 25, 2015, Plaintiff filed a Motion requesting that he be given the date and time the BOP investigated his grievance regarding staff misconduct. (ECF No. 80). Although Plaintiff is not requesting the results of the investigation, he is requesting that the BOP provide him with an official log number or reference number in regards to this "alleged" investigation. Plaintiff indicates the information is needed "just in case a jury needs to review this matter in the future." (ECF. No. 80 at 1). To the extent that this matter proceeds to trial, a scheduling order will be entered setting, among other things, discovery deadlines. Until such time, Plaintiff's request is premature and should be denied. 6. *Motion to Release All Information Concerning Civil Case to Congressman McKinley (ECF. No. 81)*

On February 27, 2015, Plaintiff filed a Motion requesting that this Court release any and all case file information to Congressman David B. McKinley upon such information being requested by him. (ECF No. 81). Plaintiff appears to include an authorization to release said information should Congressman McKinley request the same. Even if Plaintiff's request were appropriate, Congressman McKinley has not requested any information from this Court, and the Motion should be denied as moot.

7. *Motion Requesting Full Investigation Into Racial Discrimination (ECF No. 82)*

On April 10, 2015, Plaintiff filed a Motion asking this Court to request a full investigation into racial discrimination within FCI Gilmer relating to jobs, pay grades, disciplinary process, Court

filings, "etc." (ECF No. 82). In addition, Plaintiff requests that Attorney General Eric Holder be requested to conduct this investigation because "he does a great job."[8] The undersigned notes that this Motion requests what amounts to injunctive relief. Accordingly, even if the Motion were deemed to request appropriate relief, the same is now moot in light of Plaintiff's transfer to FCI Elkton, located in Lisbon, Ohio, and should be denied as such.

## *IV. CONCLUSION & RECOMMENDATION*

For the reasons set forth, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 60) be **GRANTED**. It is further **RECOMMENDED** that Plaintiff's Motions to Amend (ECF. Nos. 64, 72, 74 & 84) be **GRANTED.** In addition, it is **RECOMMENDED** that Plaintiff's remaining Motions (ECF Nos. 65, 66, 77, 80, 81, and 82) be **DENIED** for the reasons more fully set forth above. Finally, it is **RECOMMENDED** that Plaintiff's Complaint, including the Amendments as set forth in Plaintiff's Motions to Amend (ECF No. 64, 72, 74 & 84), be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce,

---

[8]Plaintiff appears to reference Holder's competency based on an article from the Criminal Law Reporter discussing a Department of Justice report concerning the Ferguson, Missouri police department and municipal court. (ECF. No. 82-1).

727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this report and recommendation, via certified mail return receipt requested, to the *pro se* plaintiff at his last known address as reflected on the docket sheet, and to any counsel of record, as applicable.

ENTER: June 29, 2015

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE